HARDY, Judge.
This is a suit in which plaintiff, the owner and operator of a funeral home in Concordia Parish, claims the principal sum of $720 from defendant. From judgment in favor of plaintiff the defendant has appealed.
On or about January 28, 1951, one Fred Mount was fatally injured while in the employ of Vasser & Brown, Inc., drilling contractors, his death occurring on the same day. At the direction of the family the plaintiff took charge of the body of the deceased Mount, prepared the same for burial and attended to all arrangements in .connection therewith. The family of the decedent selected an expensive casket, which appears to be the determining factor as to the cost of funeral services, and plaintiff’s total charges amounted to $1,020. Plaintiff received from the compensation insurance carrier of Vasser & Brown the payment of $300 as the maximum amount allowed by the workmen’s compensation statute for funeral expenses, LSA-R.S. 23: 1203. In this connection plaintiff is claiming recovery of the balance of $720.
As a cause of action plaintiff alleged, and now contends as having been established, that W. D. Brown, Vice-President and active manager of the corporation, Vasser & Brown, authorized the funeral services and accepted responsibility for the payment of whatever amount should exceed the statutory limit of $300. This is the factual issue which is here involved.
Defendant denies any agreement to pay any amount in excess of the statutory limit and strenuously contends on appeal that the evidence does not sustain the judgment rendered.
The only written reason for judgment assigned by the district judge was as follows :
“On the trial of the merits of the case it was brought out that petitioner had contacted- W. D. Brown, Vice-President of the defendant corporation, to inquire of the said Brown as to who would pay the cost of the funeral. Although the said Mr. Brown denied that such a conversation took place the court is of the opinion that it was established by a preponderance of the evidence that Mr. Brown 'had assumed responsibility for the expense of the funeral.”
Plaintiff and another witness, one E. M. Wilson, who was at the time an employee of the defendant corporation, testified in support of plaintiff’s claim. Plaintiff testified that after the members of the family of decedent, Mount, had selected such an expensive casket he immediately set about *583 contacting Mr. Brown for the purpose of procuring authorization, or rather for the fixing of responsibility for payment. It does not appear from the record that plaintiff ever made any effort to discuss this question of payment with any of the members of the decedent’s family. The testimony of plaintiff as to the details of his discussion with Brown are, for the most part, afflicted with a vagueness and uncertainty which materially weakens his position. It is established that after the accident, which occurred early in the afternoon, Brown visited the hospital to which his employee had been taken for medical attention, but that at or about the time of the employee’s death he was forced to return to the field in connection with the operation of his drilling rig and did not get back to Ferriday until 8:00 or 9:00 o’clock in the evening.
Plaintiff testified that he met Brown at the motel in Ferriday where they had coffee together sometime near the hour of 8:00 o’clock; that at this time he advised Brown of the cost of the funeral services, and was assured that he would be responsible for any amount in excess of the statutory allowance, which would be paid by the insurer. It appears that Wilson was also present at this meeting, together with another individual who was identified by the name of Buddy Harp. Just before the close of trial the note of evidence indicates a request by plaintiff to take Harp’s testimony, subject to the right of defendant to cross-depositions. However, the record does not contain any such deposition.
Plaintiff’s testimony is contradictory on a very material point. He was asked the direct question: “Did he tell you that the ■Company would be responsible?” and answered: “No.” Despite this categorical denial plaintiff admittedly presented the account to the defendant corporation and carried the same as its obligation. Later in his testimony plaintiff as emphatically contended that Brown assured him that Vasser & Brown would bear the funeral expenses. Plaintiff was unable to recall any words of the conversation and could not or would not give any exact or definite expression made by Brown. In fact, we think that his position is aptly expressed in his own words in answer to a question of his counsel on direct examination, which question and answer appear as follows:
“Q. Did he tell you that it was alright to go ahead and conduct that type of funeral, and that Vasser & Brown would pay the expenses ? A. Well, yes, he lead me to believe that, that is the reason that I called him to talk about that type of funeral, and to know where the money was coming from. I felt that the Insurance Company would pay only Three Hundred Dollars, and he assured me that the Insurance Company would pay Five Hundred Dollars, and naturally I had to explain to him that they wouldn’t, that they would only pay Three Hundred dollars, and I had to know that if the Company would stand back of the expenses for the balance of the costs, that was the way it was.” (Emphasis supplied.)
We cannot help but be impressed by the plaintiff’s apparent vagueness and uncertainty, and we are presuaded to the conclusion that his so-called understanding did not result from any definite and enforceable commitment on the part of defendant but, rather, from his own wishful thinking.
The witness, E. M. Wilson, first testified very positively that Brown said he would take care of the funeral expenses above the amount allowed by the insurance, even to the extent of repeating the exact phraseology. The witness testified that Brown told the plaintiff:
“You give the family what they want, and if they don’t pay for it I will take care of it, that whatever they want, why it suits me.”
However, later in his testimony when asked if Brown had said that if the expense was not paid he would pay for it the witness answered:
“Well, he probably said that.” (Emphasis supplied.)
*584 Still later the witness testified.
“ * * * Mr. Brown told me ‘well, if the family don’t pay it, I will take care of it, that you can depend on me to take care of the burial expense.’ ”
In his testimony Mr. Brown denied making any commitment either for himself or the defendant corporation. His narrative of the details in connection with the matter was entirely at variance with plaintiff’s story. Brown testified that his first conversation with plaintiff took place at the funeral parlor, and that the only reference to cost was concerned with the amount that would be allowed by the insurer, he being under the impression that the insurer would pay $500 instead of the $300 sum mentioned by Young. Later Brown testified that he, plaintiff, Wilson and another party went over to the motel for coffee but had no conversation about funeral costs.
There is some testimony, particularly on the part of Wilson and Brown, as to the latter’s instructions to Wilson. It appears that upon leaving the hospital to go back to the rig Brown told Wilson to look after the family. The exact words are not established but it seems evident that Wilson was told to care for the family and see that “they got what they want”. It could very well be that this remark was the cause of some misunderstanding and uncertainty.
The only other witnesses were Mrs. Brown and Mrs. Young and the latter testified that although she was present at the funeral home during a part of the time that Mr. Brown was talking with her husband they did not discuss the payment of funeral costs in her presence. Mrs. Brown testified that she had talked with plaintiff at the funeral home before her husband returned from the field. At this time, although the witness testified that plaintiff had mentioned the fact that the decedent’s family had decided upon a very expensive funeral, no statement was made about payment.
Careful examination of the testimony has convinced us that plaintiff failed to establish his claim with that certainty and by such a preponderance of the evidence as is required.
After trial on the merits but before judgment, exceptions of no cause and no right of action were filed on behalf of defendant. In view of our holding on the merits discussion of the issues raised by the exceptions is unnecessary.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of defendant, Vasser & Brown, Inc., rejecting plaintiff’s demands at his cost.